UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALICIA ANN KING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-25-CV-720-XR (HJB) |
| | § | |
| FRANK BISIGNANO, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Xavier Rodriguez, United States District Judge:**

This Report and Recommendation concerns Plaintiff's request for review of the administrative denial by the Commissioner of the Social Security Administration (the "Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II, pursuant to 42 U.S.C. § 405(g).  This matter was automatically referred to the undersigned for findings and recommendations pursuant to an October 8, 2019, Divisional Standing Order.  (*See* Text Entry dated June 25, 2025.)

After considering the parties' briefs (Docket Entries 8, 11, and 12), the transcript ("Tr.") of the proceedings below (Docket Entry 4), and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED**.

**I.     Jurisdiction.**

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

**II.    Background.**

Plaintiff filed an application for DIB on February 15, 2023.  (*See* Tr. 592–95.)  She alleged a disability onset date of September 23, 2021, and a last insured date of December 31, 2024.  (Tr. 18.)  Plaintiff is 52 years old; she has a high school diploma and has completed some college courses.  (Tr. 20, 23.)

After the Commissioner denied her initial claim and her request for reconsideration, Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Alexis Murdock on January 24, 2025.  (*See* Tr. 385–417.)  On February 19, 2025, the ALJ issued a decision finding that Plaintiff was not disabled.  (Tr. 15–25.)  In her decision, the ALJ followed the five-step sequential evaluation process required under 20 C.F.R. § 404.1520(a).  (Tr. 16–17.)

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 18.)  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, plantar fasciitis, left ankle and knee osteoarthritis, tendinitis, obesity, depression, insomnia, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD").  (Tr. 18.)  At step three, the ALJ found that Plaintiff had no "impairment or combination of impairments that meets or medically equals the severity of one of the impairments" listed in 20 C.F.R. § 404, Subpart P, App. 1 ("the Listings").  (Tr. 18–20.)

Before reaching step four in the analysis, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform "light" work as defined in 20 C.F.R. § 404.1567(b), subject to the following mental limitations: she can understand, remember, and carry out detailed instructions and tasks, but not complex instructions or tasks; and she can interact frequently with supervisors and coworkers, but only occasionally with the public.  (Tr. 20.)  At step four, the ALJ found that Plaintiff had no past relevant work.  (Tr. 23.)  But at step five, based on her RFC findings

2

and the testimony of vocational expert ("VE") Susan Brooks, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform—all classified as light, unskilled work (SVP-2): merchandise marker, DOT 209.587-034, with 165,000 jobs in the national economy;  assembler, DOT 739.687-030, with 28,000 jobs in the national economy; and routing clerk, DOT 222.587-038, with 23,000 jobs in the national economy  (Tr. 24.)  Based on those findings, the ALJ concluded that Plaintiff was not disabled.  (Tr. 25.)

Plaintiff requested review by the Appeals Council, which denied the request, finding "no reason under [its] rules to review the Administrative Law Judge's decision."  (Tr. 1.)  The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner.  (Tr. 1.)  This appeal followed.  (Docket Entry 1.)

## III.    Applicable Legal Standards.

### A.    *Standard of Review.*

In its review, the Court is limited to a determination of whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standard was applied. 42 U.S.C. § 405(g); *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015).  The Court weighs four elements of proof in determining whether substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005).  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Madkins v. Bisignano*, 150 F.4th 657, 662 (5th

Cir. 2025). The Court may not substitute its judgment for that of the Commissioner. *Perez*, 415 F.3d at 461. Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.*.

While substantial deference is owed to the ALJ's factual findings, the ALJ's legal conclusions—and any claims of procedural error—are reviewed *de novo*. *Sprowl v. Comm'r of Soc. Sec.*, 794 F. Supp. 3d 477, 481 (W.D. Tex. 2025) (citing cases). But even when an ALJ errs, the Court must further determine whether the error was harmless. Procedural errors are harmless "as long as the substantial rights of a party have not been affected." *Madkins*, 150 F.4th at 663. "Procedural errors are therefore a basis for remand only if they 'would cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Adams v. Colvin*, 202 F. Supp. 3d 644, 647 (W.D. Tex. 2016) (quoting *Morris v. Brown*, 864 F.2d 333, 335 (5th Cir. 1988)).

**B.**     ***Entitlement to Disability Benefits*.**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [12] months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if her physical or mental impairments are so severe that she is unable to do her previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in the national economy—regardless of whether such work is available in the immediate area where she lives, whether a specific job vacancy actually exists, or whether she would be hired if she applied for such work. *Id*. § 423(d)(2)(A).

### C. *Evaluation Process and Burden of Proof.*

Social Security regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. § 404.1520 (2012). At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). If so, then she is not disabled regardless of her medical conditions, age, education, or work experience. *Id*. § 404.1520(b). At the second step, the Commissioner determines whether the claimant's impairment is severe. *Id*. § 404.1520(a)(4)(ii). Absent a severe impairment, a claimant is not disabled. *Id*. § 404.1520(c). At the third step, the Commissioner compares the severe impairment with those in the Listings. *Id*. § 404.1520(a)(4)(iii); *see* 20 C.F.R. § 404 Subpart P, App'x 1. If the severe impairment meets or equals an impairment in the Listings, then the claimant is disabled. 20 C.F.R. § 404.1520(d); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the severe impairment does not meet or equal an impairment in the Listings, then the Commissioner must determine the claimant's RFC and proceed to the fourth step: reviewing the demands of her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is still able to perform her past work, then she is not disabled. *Id*. § 404.1520(f). Otherwise, the Commissioner must proceed to the fifth and final step: evaluating the claimant's ability—given her residual capacities, age, education, and work experience—to do other work. *Id*. § 404.1520(a)(4)(v). Only if she cannot perform any other work will the claimant be deemed disabled. *Id*. § 404.1520(g).

The claimant bears the burden of proof during the first four steps of this process. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). But once the claimant has shown that she is unable to perform her past work, the burden shifts to the Commissioner to identify other substantial gainful employment available to the claimant that she is physically able to perform—and to maintain for a significant period of time—taking into account her exertional and non-exertional

limitations. *Watson v. Barnhart*, 288 F.3d 212, 216–17 (5th Cir. 2002). "If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified." *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017) (citation modified). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

## IV.    Analysis.

Plaintiff presents two issues on appeal:  (a) that the RFC was inconsistent with the ALJ's step two findings regarding Plaintiff's severe mental impairments; and (b) that the ALJ relied upon obsolete occupations to meet the Commissioner's step five burden.  (Docket Entry 8, at 3.)  This Report and Recommendation considers each issue in turn.

### A. *Whether the RFC Finding Was Inconsistent with the ALJ's Step Two Findings Regarding Plaintiff's Severe Mental Impairments.*

As noted above, the ALJ found at step two of her analysis that Plaintiff had the severe mental impairments of insomnia, depression, generalized anxiety disorder, and PTSD.  (Tr. 18.) To determine at step three whether these severe impairments required a finding of disability under the Listings in 20 C.F.R. § 404 Subpart P, App'x 1, the ALJ evaluated the four broad areas of mental functioning known as the "paragraph B" criteria.  (Tr. 18–20.)  These criteria are: (1) understanding, remembering, or applying information;  (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(E)(1)–(4); *see also* 20 C.F.R. § 404.1520a(c)(3) (2017); SSR 96-8p, 1996 WL 374184, at *4.  For each area, the ALJ was required to rate the degree of limitation using a five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  An "extreme" limitation in any one area, or a "marked" limitation in any two

or more areas, meets or equals the paragraph B criteria and requires a finding of disability.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).

The ALJ found that Plaintiff's mental impairments, while severe, did not meet or equal the Listings.  The ALJ determined that Plaintiff had mild limitations in understanding, remembering, and applying information, as well as in her ability to adapt of manage herself; the ALJ found moderate limitations in interacting with others, as well as in concentrating, persisting, and maintaining pace.  (Tr. 19.)  In making these findings, the ALJ expressly cited and discussed Plaintiff's own statements and the medical evidence in the record.  (*See id*.)

Plaintiff does not take direct issue with the ALJ's findings.  Instead, she argues that the ALJ's findings were inconsistent with the RFC, and that this inconsistency rendered the ALJ's conclusions at steps four and five invalid.  (Docket Entry 8, at 5–8.)  Plaintiff argues that the ALJ's RFC finding improperly omitted any limitation on her ability to perform basic work activities.  (*Id.* at 6.)  Plaintiff acknowledges that the mental portion of the RFC limited her to understanding, carrying out, and remembering detailed but not complex instructions.  (*Id.* (citing Tr. 20).)  But Plaintiff argues that her severe mental impairments would limit her ability to perform even simple work, and that  the ALJ made no accommodation in this regard when formulating the RFC.  (Docket Entry 8, at 6–7.)  In support of this argument, Plaintiff relies on the regulations regarding non-severe impairments—regulations which suggest, by implication, that if a mental impairment is severe, it significantly limits one's mental ability to do "basic work activities," including "[u]nderstanding, carrying out, and remembering simple instructions" and the use of judgment. (*Id.* at 6 (citing 20 C.F.R. § 404.1522(b)(3) (2017).)

In response, the Commissioner cites a decision from the Southern District of Texas rejecting a similar argument made by the same attorney who represents Plaintiff in this case: *Wells*

*v. Saul*, No. 6:20-CV-14, 2021 WL 4976724 (S.D. Tex. June 10, 2021), *report and recommendation adopted*, 2021 WL 4973714 (Oct. 25, 2021). (*See* Docket Entry 11, at 7.) In that case, the ALJ found that the plaintiff had the severe mental impairments of persistent depressive disorder and panic disorder. *Wells*, 2021 WL 4976724, at *5 As in this case, the ALJ's RFC determination accounted for the impairments by including a limitation that the plaintiff could only understand, carry out, and remember detailed but not complex instructions. *Id.* The plaintiff argued, however, that the ALJ's finding of a severe mental impairment necessarily meant that her ability to understand, remember, and carry out even simple instructions is limited. *Id.* at *8. The court rejected that argument, finding that the plaintiff had "conflate[d] the second step of the sequential evaluation with the RFC determination." *Id.* The court held that an ALJ's finding that a particular impairment is "severe" at the second step "does not require the finding of any specific limitation during consideration of the later steps because a different standard applies." *Id.*

Plaintiff argues that the Court should not follow *Wells* because of the limited analysis that the court performed in reaching its conclusion. (Docket Entry 12, at 4.) This argument is undercut by the fact that, even though Plaintiff's counsel also represented the plaintiff in *Wells*, no objections to the Magistrate Judge's recommendation were filed and no appeal was sought. *See* 2021 WL 4973714, at *1. But even without *Wells*, counsel's argument has repeatedly been rejected by other courts in the Fifth Circuit, including by a magistrate judge in the Northern District of Texas in the recent decision in *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-BP, 2025 WL 1268116 (N.D. Tex. May 1, 2025). Rejecting the same argument made here, the *Roberts* court concluded that there was "no authority that a finding of a severe limitation at step two must correspond to an RFC finding that specifically limits understanding, carrying out, and remembering simple instruction." 2025 WL 1268116, at *4 (citation modified). To the contrary,

the court held that the Social Security regulations "do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." *Id.* (quoting *Patterson v. Astrue*, No. 1:08-CV-109-C ECF, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009)).

*Roberts* is instructive here. As in that case, the ALJ here found moderate deficits in concentration, persistence, and pace; here, the ALJ additionally found moderate limitations in interacting with others. (Tr. 19.) She incorporated those findings into the RFC by limiting Plaintiff to carrying out detailed but not complex instructions, and to only occasionally interacting with the public (Tr. 20.) Addressing the Paragraph B findings in this way, as the *Roberts* court noted, has "been upheld in numerous other courts." 2025 WL 1268116, at *5 (collecting cases). Accordingly, under the reasoning in *Roberts* and the cases on which it relied, Plaintiff is mistaken in arguing that the ALJ's findings are necessarily inconsistent and require remand. (*See* Docket Entry 8, at 13.)[1]

Plaintiff's counsel relies on a Colorado case to support her position: *K.L.J. v. Comm'r, Soc. Sec. Admin.*, 809 F. Supp. 3d 1301 (D. Colo. 2025). (*See* Docket Entry 12, at 5.) But *K.L.J.* is

---

[1] The undersigned notes that the plaintiff in *Roberts* was represented by the same counsel who represented the plaintiff in *Wells* and Plaintiff in this case. *See* 2025 WL 1268116, at *1. As in *Wells*, no objections or appeal were pursued in *Roberts*. Additionally, the undersigned has twice relied upon *Roberts* in the last year in recommending rejection of similar arguments made by the same counsel; in neither of those cases did counsel object to the recommendations. *See Hernandez v. Bisignano*, No. SA-24-CV-458-OLG (HJB), 2025 WL 2217481 (W.D. Tex. July 14, 2025), *report and recommendation adopted*, 2025 WL 2212080, (July 31, 2025); *Lopez v. Bisignano*, No. SA-25-CV-232-OLG (HJB), 2025 WL 4033863 (W.D. Tex. Dec. 14, 2025), *report and recommendation adopted*, 2026 WL 88293 (Jan. 9, 2026). The same counsel has similarly declined to challenge reliance on *Roberts* in a number of recent Northern District cases. *See, e.g.*, *Cagni o/b/o Mindy J. v. Comm'r*, No. 3:24-CV-2456-E-BK, 2025 WL 2775153 (N.D. Tex. Aug 29, 2026), *report and recommendation adopted*, 2025 WL 2773816 (N.D. Tex Sept. 26, 2025); *Buescher v. Comm'r*, No. 4:24-CV-538-BJ, 2025 WL 1931948, at *12 (N.D. Tex. July 14, 2025) (noting pattern of courts rejecting counsel's argument).

distinguishable.  The claimant in that case had moderate limitations in all four areas of mental functioning.  *Id.* at 1305.  And although the ALJ there incorporated some mental limitations into the RFC, the district court found that the ALJ neither explained "what specific functional capacities Plaintiff's moderate mental limitations affected, nor how limiting her to unskilled work would account for them."  *Id.* at 1308 (citation modified).  In stark contrast, the ALJ here found moderate limitations in only two areas of mental functioning: (1) interacting with others, and (2) concentrating, persisting, and maintaining pace.  (Tr. 19.)  And as the ALJ explained in her decision, the RFC specifically accounted for these limitations by restricting Plaintiff to work involving understanding, remembering, and carrying out detailed but not complex instructions, and limiting her interaction with coworkers, supervisors, and the public.  (*See* Tr. 23 (expressly connecting Plaintiff's moderate limitations to mental-functioning limitations in her RFC).) [2]

The ALJ's mental RFC limitations are supported by substantial evidence.  In her decision, the ALJ considered Plaintiff's self-reported limitations and testimony, treatment records, and prior administrative findings at the initial and reconsideration levels.  (Tr. 20–23.)  The ALJ evaluated this evidence carefully—adopting only the reconsideration-level administrative findings which she found to be consistent with, and supported by, the treatment record and Plaintiff's reported symptoms.  (Tr. 22–23.)  At the conclusion of her evaluation, the ALJ found that that Plaintiff suffered limitations in her mental functioning, and she directly tied those limitations to the limitations she placed in Plaintiff's RFC.  (Tr. 23.)  Under these circumstances, Plaintiff has failed to show an erroneous inconsistency in the ALJ's determinations, let alone one requiring remand.

---

[2] In addition to relying on *K.L.J.*, Plaintiff' brief urges the Court to consider delaying ruling in this case pending a ruling by Judge Farrer on similar arguments in another case in this Division, *Hernandez v. Dudek*, No. 5:24-CV-1234. (Docket Entry 12 at 6.) However, that case was ultimately decided on other grounds. *See id.*, Order at 5 (W.D. Tex. Mar. 27, 2026).

**B.** ***Whether the ALJ Relied on Obsolete Occupations to Find the Commissioner Met His Step Five Burden***.

As noted above, the ALJ relied upon expert testimony from the VE to find that there were three jobs in the national economy that Plaintiff could perform: merchandise marker, DOT 209.587-034, with 165,000 jobs in the national economy; assembler, DOT 739.687-030, with 28,000 jobs in the national economy; and routing clerk, DOT 222.587-038, with 23,000 jobs in the national economy (Tr. 24.) Plaintiff takes issue with the first and third of these jobs—marker and routing clerk—suggesting that modern technology has rendered them obsolete, such that the VE's testimony as to the number of such jobs in the national economy is not credible. (Docket Entry 8, at 13–15.)

With regard to the job of marker, Plaintiff cites a number of decisions from courts in other circuits which questioned the credibility of VE testimony that the job still exists in significant numbers in the national economy. (*See* Docket Entry 8, at 14 (citing cases).) And a cursory review of the DOT description of the job arguably casts doubt on whether it is still prevalent:

> **MARKER** (retail trade; wholesale tr.) alternate titles: marking clerk; merchandise marker; price marker; ticket maker. Marks and attaches price tickets to articles of merchandise to record price and identifying information. Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine

DOT 209.587-034. As a judge in the Eastern District of New York stated in *dicta*, "[g]iven the prevalence of bar codes, PLU (price look-up) codes and the like, it seems unlikely that significant numbers of price markers continued to wield pricing guns, or do similar work, in the nation's retail

11

outlets . . . ." *Henderson v. O'Malley*, No. 21-CV-3304(EK), 2024 WL 127843, at *5 (E.D.N.Y. Jan. 11, 2024).

Such concerns, however, do not support reversal for lack of substantial evidence. Courts cannot find that the ALJ's decision is unsupported by substantial evidence unless "no credible evidentiary choices . . . support the decision." *Madkins*, 150 F.4th at 662. There is no such absence here. The VE testified at some length as to the information she relied upon to determine the number of marker jobs in the economy, including Job Browser Pro, Bureau of Labor Occupational Employment and Wage Statistics, U.S. Census data, Employment Statistics Quarterly, and various professional journals. (Tr. 413.) Counsel for Plaintiff did not challenge the sources of information upon which the VE relied; nor did counsel question her credentials as an expert. (*See* Tr. 411, 414–16.) In such circumstances, the Court should not find that the ALJ's reliance on the VE's testimony was "no[t a] credible evidentiary choice[]." *Madkins*, 150 F.4th at 662.

Even if the ALJ's reliance upon the VE's testimony were somehow cast as procedural error, reversal would still be unwarranted, as any such error would be harmless. After all, even if the number of marker positions were reduced by half, there would still be 82,500 marker jobs in the national economy—a significant number. *See Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (per curiam) (finding 50,000 jobs to be significant in national economy); *Morales v. Barnhart*, No. EP-22-CV-120-FM, 2023 WL 2626075, at *2 (W.D. Tex. Mar. 23, 2023) ("[O]ccupations such as marker . . . exist in significant numbers in the national economy.").[3] And because substantial evidence supports the ALJ's finding that there were a significant number of

---

[3] Though not reflected in the Court's opinion, the records in *Morales* show that the VE there reduced the number of marker jobs in the economy by 50 percent, and still found 64,500 jobs existed. *See Morales*, Comm'r Br. at 12 (W.D. Tex. Aug. 15, 2022).

marker jobs in the national economy, the Court need not address Plaintiff's challenge to the routing clerk position.[4]

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that the Commissioner's decision denying Plaintiff's application for DIB be **AFFIRMED**.

## VI.    Instruction for Service and Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user," or (2) by mailing a copy to those not so registered by certified mail, return receipt requested. The parties must file written objections, if any, to this Report and Recommendation **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which their objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded.  *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[4] The undersigned notes that, even if the Court were to eliminate all the marker and routing clerk jobs from the equation, that would still leave uncontested testimony that there are 28,000 assembler jobs in the national economy that Plaintiff could perform. (Tr. 412.) Courts in the Fifth Circuit have regularly found that fewer jobs than that suffice to meet the Commissioner's step five burden. *See, e.g., Bryant v. Kijakazi*, No. 6:22-CV-1098-ADA-JCM, 2023 WL 12008469, at *4 (W.D. Tex. Sept. 11, 2023) (25,000 jobs); *Ellis v. Astrue*, No. Civ. A. 11-2121, 2013 WL 595071, at *4 (W.D. La. Jan. 17, 2013 (16,566 jobs), *report and recommendation adopted*, 2013 WL 596425 (W.D. La. Feb. 14, 2013); *McGee v. Astrue*, No. Civ. A. 08-0831, 2009 WL 2841113, at *6 and n.14 (W.D. La. Aug. 28, 2009) (18,760 jobs).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on June 11, 2026.

_____
Henry J. Bemporad
United States Magistrate Judge

14